## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GENOMIND, INC.,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **UNITEDHEALTH GROUP INC.;** | **NO.  21-373** |
| **UNITED HEALTHCARE SERVICES,** | |
| **INC.; UNITED HEALTHCARE** | |
| **INSURANCE COMPANY; UNITED** | |
| **HEALTHCARE SERVICE LLC; UNITED** | |
| **BEHAVIORAL HEALTH; UMR, INC.;** | |
| **OXFORD HEALTH PLANS, LLC;** | |
| **OPTUM, INC.,** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

At the heart of this dispute is Plaintiff Genomind, Inc.'s allegation that Defendant UnitedHealth Group, Inc. ("United"), a health insurance company, and its subsidiaries (together "Defendants"), failed to pay for genetic tests Genomind performed for patients with United insurance plans.[1]  Genomind claims that it had an implied contract with United to develop a new version of its genetic test to meet United's specifications for the test to be covered under United insurance plans, but after Genomind developed (incurring expenses in doing so) and patients started using this test Defendants did not pay as it promised.  Plaintiff thus asserts claims against all Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and against United under several Pennsylvania common law causes of action.  Defendants now move to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] Per the Complaint, these "wholly-owned subsidiaries and controlled subsidiaries" include United HealthCare Services, Inc., United HealthCare Insurance Company, United HealthCare Service LLC, United Behavioral Health, UMR, Inc., Oxford Health Plans, LLC, and Optum, Inc.

## I.   BACKGROUND[2]

Genomind provides a genetic testing service that "predicts patient response to psychiatric medications," and thus allows health providers "to prescribe medications that are properly tailored for their patients' genetic makeup."  Genomind only tests patients whose treating health provider has prescribed Genomind's services based on that provider's determination that "Genomind's test is medically necessary and appropriate . . . to assist with identifying the most appropriate psychiatric medications."  Before August 2019, United interpreted health plans it offered or administered to exclude Genomind's genetic tests from coverage because "[a]ccording to United, such testing was experimental and investigational as defined by a written exclusion found in each of those plans."  In August 2019, however, United issued a new commercial medical policy ("2019 Policy") announcing that, beginning on October 1, 2019, it would cover genetic testing for mental health issues, such as those provided by Genomind.  Under the 2019 Policy, United deemed such tests "proven and medically necessary for antidepressants and antipsychotics medication," and thus could be covered under United insurance plans, when three criteria were satisfied: (1) the patient "has a diagnosis of major depressive disorder or anxiety"; (2) the patient "has failed at least one prior medication to treat their condition; and (3) the test tests "no more than 15 relevant genes."  The Policy also stated, however, that "[b]enefit coverage for health services is determined by the member specific benefit plan document and applicable laws."

After United announced the 2019 Policy, Genomind "engaged in extensive communications with senior United representatives to ensure that Genomind would be able to

---

[2] The following facts are drawn from the allegations of the Complaint and are taken as true, as required on a motion to dismiss under Rule 12(b)(6), as well as from United's 2019 Policy, which was relied upon by the Complaint and attached to Defendants' Motion to Dismiss.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Pension Benefit Guar. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

have its . . . claims properly submitted to United, consistent with the United coverage policy, so that Genomind would receive proper benefit payments for such services."  There was one wrinkle: Genomind's test – the "Full 24 Test" – tested 24 genes, not 15.  United informed Genomind that its 24-gene test "would not be deemed a covered service by United, even if the 15 covered genes were included within the 24-gene panel."  The Complaint alleges that this "restrictive policy . . . leads to the denial of coverage for medically necessary health care services," as even "if a provider prescribed a genetic testing panel that included 16 genes, 15 of which United recognized as medically necessary, United would nevertheless deny coverage for the entire test."

However, United also informed Genomind that it "would be able to get coverage for its genetic tests so long as it developed a panel of 15 genes, rather than the 24-gene panel that .Genomind was then using, and that Genomind would be able to submit and be paid directly for those claims."  Accordingly, Genomind "spent months and invested substantial financial resources" to develop the "Core 15 Test," a new and "unique 15-gene panel that it could use for United patients to ensure coverage and payment by United."  Its "time, labor, and other investments to develop, test, and roll out the 15-gene product well exceeded one million dollars."

While developing the Core 15 Test, Genomind employees met, spoke, and corresponded with United employees concerning Genomind's new test.  United's employees confirmed that "Genomind's product, when reduced to a 15-gene panel, would be covered by United," that medical care providers "who wished to use the Genomind test could obtain approval through [a] prior authorization process" if specific insurance plans required that genetic testing services to be approved in advance, and that Genomind's genetic testing services "would be covered with Genomind . . . proceeding as an out-of-network provider."  After the new policy went into effect,

3

Genomind submitted claims to Defendants for payment for its provision of genetic testing services to patients with United insurance plans.  Genomind soon recognized, however, that "its claims were frequently not being paid by United, even when prior authorization had been received."  Although Defendants frequently failed to pay claims "without issuing a formal denial, leaving Genomind in limbo about how to handle the unpaid claim[s]," Defendants also denied claims for "baseless" reasons, including for lack of prior authorization where none was required and because, contrary to United's stated policy, the test was experimental or not medically necessary.  In all, Defendants failed to pay 4,373 claims, including for 1,235 Core 15 Tests and 3,138 Full 24 Tests.  Of relevance here is that of these 4,373 claims, 3,698 claims are for United insured patients with plans governed by ERISA.  Genomind's "standard practice is to file internal appeals to challenge United's wrongful denials" of coverage for insurance claims, and Genomind did so for the unpaid claims at issue here.

The Complaint asserts ERISA claims against all Defendants, including to recover benefits due under United's ERISA-governed insurance plans pursuant to 29 U.S.C. § 1132(a)(1)(B), and, in the alternative, for appropriate equitable relief under 29 U.S.C. § 1132(a)(3)(A) and (B).  Genomind also asserts claims under Pennsylvania law against United only for breach of implied in fact contract, promissory estoppel, *quantum meruit*, unjust enrichment, and negligent misrepresentation.

## II.     STANDARD OF REVIEW

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss under Rule 12(b)(6), all factual allegations of the complaint are accepted as true, viewed in the light most favorable to the plaintiff, and all reasonable inferences are drawn in the plaintiff's favor.  *See Malleus v. George*,

641 F.3d 560, 563 (3d Cir. 2011).  Legal conclusions are not accepted as true, however, as "we are not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  "[T]he factual allegations of a complaint must be enough to raise a right to relief above the speculative level."  *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quotation marks and citation omitted). Only the allegations of a complaint, exhibits attached to a complaint, matters of public record, and documents attached as exhibits to a motion to dismiss if explicitly relied upon by a complaint may be considered.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit*, 998 F.2d at 1196.

## III.   DISCUSSION

### A.  ERISA Claims

#### i.  *Preemption*

Defendants argue that Plaintiff's state law claims must be dismissed because they are preempted by ERISA Sections 502 and 514 in that they seek recovery for benefits due under ERISA-governed plans and would require interpretation of these plans.  As a preliminary matter, Genomind's state law claims do not solely seek to recover for Genomind's provision of genetic testing services.  For example, Genomind's claim for promissory estoppel is premised, *inter alia*, on Genomind's "investing substantial time and money in developing the Core 15 Test for the

sole purpose of fulfilling United's arbitrary 15-gene criterion." And, Genomind's claim for

negligent misrepresentation alleges that Genomind "would not have invested substantial time

and resources to develop a 15-gene test" absent United's misrepresentations, which "proximately

caused damages to Genomind." To the extent that Genomind's promissory estoppel and

negligent misrepresentation claims seek damages for Genomind's development of the Core 15

Test, as distinguished from payments Genomind says it is owed for the genetic tests it

performed, these claims are not preempted by ERISA because such claims are not "relate[d] to

any employee benefit plan," 29 U.S.C. § 1144(a), as required for preemption under Section 514,

and could not be brought as a Section 502(a) claim, as required for preemption under that

provision, *see N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d

297, 303 (3d Cir. 2014) (quotation marks and citations omitted).[3]

Moreover, the parties agree that some of the insurance claims for which Genomind

claims that Defendants improperly denied payment arise from genetic tests Genomind performed

for patients whose insurance plans are not governed by ERISA, and that Plaintiff's state law

claims are not preempted to the extent that they are premised on Defendants' failure to pay these

non-ERISA claims. *See also, e.g.*, *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)

("ERISA pre-empts a state law if it has a reference to ERISA plans" ("quotation marks and

citation omitted)); *Ahn v. Cigna Health & Life Ins. Co.*, 2019 WL 5304628, at *5 (D.N.J. Oct.

21, 2019) ("[P]reemption will not come into play at all" to the "extent that [the plaintiff's] claims

relate to non-ERISA plans").

Thus, preemption need not be addressed to determine if the Complaint "state[s] a claim

---

[3] Whether Genomind's state law claims ultimately are preempted under Section 514 will likely turn on the import of *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218 (3d Cir. 2020), which sets forth a detailed analysis of ERISA preemption of state law claims brought by out of network healthcare providers against insurance companies arising out of insurance companies' failure to pay for medical services.

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At most, adjudication of preemption here would result in dismissal of the portion of Genomind's state law claims premised on Defendants' failure to pay for genetic tests pursuant to ERISA-governed plans. Because adjudication of this issue will be aided by a more developed record, and because the survival of Plaintiff's state law claims does not depend on the disposition of the preemption issue, the Court will defer taking up preemption until and if it is addressed at a later stage in the proceedings.  *See also Lupian v. Joseph Cory Holdings Co.*, 905 F.3d 127, 130-31 & n.4 (3d Cir. 2018) (motions for judgment on the pleadings and summary judgment are "more appropriate vehicles for determining whether a claim is preempted," and "dismissal is appropriate under Rule 12(b)(6) only when preemption is manifest in the complaint itself." (quotation marks and citations omitted)); *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) ("On a Rule 12(b)(6) motion, an affirmative defense . . . is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff." (citation omitted)).

### ii.   *Section 502(a)(1)(B)*

"ERISA is a comprehensive statute enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits."  *In re Unisys Corp. Retiree Med. Ben. ERISA Litig.*, 58 F.3d 896, 901 (3d Cir. 1995) (quotation marks and citations omitted).  ERISA Section 502(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  To plead a claim under this provision, a plaintiff must allege facts "demonstrat[ing] that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan," and that the denial of

7

those benefits therefore was improper.  *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d
Cir. 2006) (quoting 29 U.S.C. § 1132(a)(1)(B)).  Although ERISA authorizes suit by participants
and beneficiaries of ERISA plans, "health care providers may obtain standing to sue by
assignment from a plan participant."  *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176
n.10 (3d Cir. 2014); *see also N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d
Cir. 2015) ("[W]hen a patient assigns payment of insurance benefits to a healthcare provider, that
provider gains standing to sue for that payment under ERISA § 502(a).").  The Complaint alleges
that "Genomind has the legal right to assert the ERISA claims brought herein for all United
ERISA Insureds" pursuant to a form signed by each insured patient which "assign[ed] any
payments from [the Insured's] insurance carrier to Genomind."

Defendants argue that the Section 502(a)(1)(B) claim must be dismissed because the
Complaint does not allege (1) what specific provision of the ERISA plans were violated, and
thus lacks sufficient factual matter to plead a plausible claim for relief; and (2) sufficient facts to
show that Genomind satisfied ERISA's exhaustion requirement.

Defendants' first argument is belied by the allegations of the Complaint which alleges
that "the United ERISA Plans cover medically necessary health services that are not
experimental, defined to mean services provided in a manner consistent with generally accepted
standards of medical care[,]" but that, nevertheless, Defendants "breached the terms of the
ERISA plans and violated ERISA by failing to pay Genomind for out-of-network benefits" for
genetic tests, which were medically necessary, not experimental, and thus covered by the ERISA
Plans.

Taking these allegations as true and viewing them in the light most favorable to
Genomind, the Complaint has sufficiently pled facts demonstrating that the benefits Genomind

seeks to recover are "actually 'due'" under the "terms" of the ERISA Plans.  *Id.*  At this stage, Genomind need only plead sufficient facts to allow the reasonable inference that Defendants are liable for the alleged misconduct.  *Iqbal*, 556 U.S. at 678.  To that end, and contrary to Defendants' contention here, the Complaint has identified the portion of the ERISA plans under which it is alleges it is owed benefits: the terms of the ERISA plans providing that Defendants would cover non-experimental, medically necessary health services.  *See also Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga, Inc.*, 892 F.3d 719, 729 (5th Cir. 2018) ("[P]laintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss under Rule 12(b)(6)."); *Griffin v. TeamCare*, 909 F.3d 842, 845 (7th Cir. 2018) (same).

Defendants argue that Genomind did not exhaust its administrative remedies with respect to its claims that arise from an ERISA plan.  But neither does this argument (under the rubric of a motion to dismiss) defeat Genomind's Section 502(a)(1)(B) claim.  Generally, "a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."  *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) (citation omitted).  This is a judge-created, "nonjurisdictional affirmative defense," *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007) (citations omitted), which aims "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned," *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (quotation marks and citation omitted).  Defendants point to allegations of the Complaint in which Genomind alleges that United requested that it mail "all related medical records" for patients with unpaid claims, despite knowing that Genomind "does not have access to these

records," that full medical records were irrelevant for purposes of evaluating whether United improperly denied payment, and that United requested these records to "create[] delays in payment or excuses for outright denials for what otherwise would be covered services under the United plans."  Defendants have not explained whether and why the mailing of these copious records were a requirement for the exhaustion of "remedies available under the [United] plan[s]," and on a motion to dismiss, Plaintiff's allegations – including that unnecessary administrative obligations were asserted in bad faith – must be taken as true.  *Weldon*, 896 F.2d at 800; *see also Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015) ("The ERISA exhaustion requirement is an affirmative defense, so the defendant bears the burden of proving failure to exhaust." (citations omitted)).  Here, the Complaint alleges that "Genomind's standard practice is to file internal appeals to challenge United's wrongful denials" of the claims for both the Core 15 and Full 24 Tests, that "Genomind did so with respect to the unpaid claims identified" in the Complaint, and that Defendants "denied those appeals" or "ignored them entirely."  Taking these factual allegations as true, and granting all reasonable inferences in Genomind's favor, the Complaint alleges facts sufficient to show their exhaustion of administrative remedies.[4]

### iii.  Section 502(a)(3)

Section 502(a)(3) is a "catchall" provision of ERISA that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by [ERISA] violations that § 502 does not elsewhere adequately remedy," *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (quotation

---

[4] Discovery may – or may not – reveal that Genomind failed to exhaust administrative remedies for each of the ERISA claims, but for now, given the allegations of the Complaint, the assumption is that it has done what it needed to do with respect to administrative remedies.  *See also Am. Chiropractic*, 625 F. App'x at 173 n.5 ("Because the exhaustion defense often requires consideration of materials outside the pleadings and is thus typically resolved on summary judgment, it is not generally the basis for dismissal under Rule 12(b)(6).").  The parties vigorously dispute whether, to the extent that exhaustion has not been adequately plead, such requirement was excused on grounds of futility, but this dispute need not be resolved here.

marks omitted), including for an insurance plan administrator's breach of fiduciary duty, *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1012 (3d Cir. 1997).  The provision authorizes suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Because this provision only "authorizes '*appropriate*' equitable relief," however, if a plaintiff's claim under Section 502(a)(1)(B) would "provide[] adequate relief" for their claim seeking equitable relief, "there will likely be no need for further equitable relief, in which case such relief would not be 'appropriate.'"  *Varity*, 516 U.S. at 512 (quoting 29 U.S.C. § 1132(a)(3)).  Thus, if a plaintiff's complaints are fully addressed under Section 502(a)(1)(B), equitable relief is unavailable under Section 502(a)(3).  *See id.*; *see also Ream v. Frey*, 107 F.3d 147, 152 (3d Cir. 1997) ("Where Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought not be provided.").

Genomind asserts claims for equitable relief under Section 502(a)(3), alleging that United breached its fiduciary duties by (1) "elevating its own interest in reducing benefit expenses for itself and its self-funded plan sponsors over the interests" of the plan participants; (2) "failing to exercise due care in the statements it made to [participants] about the extent of coverage available under their plans, and failing to ensure the accuracy of such statements"; and, (3) by failing to comply with 29 U.S.C. § 1133, which requires that benefit plans provide "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," *inter alia*, and its implementing regulation, 29

C.F.R. § 2560.503-1.[5]

Defendants contend that Genomind's claims under Section 502(a)(3) must be dismissed to the extent that they challenge the same conduct underpinning Plaintiff's Section 502(a)(1)(B) claim. However, the face of the Complaint demonstrates that these are substantively different claims. While the Section 502(a)(1)(B) claim challenges Defendants' failure to pay plan benefits in violation of the terms of the ERISA plans and ERISA, the Section 502(a)(3) claims challenges Defendants' conduct in processing claims that allegedly constituted a breach of fiduciary duties, including Defendants' failure to (1) "issue timely explanations of benefits"; (2) "identify the specific reasons for an adverse benefit decision"; (3) "reference the specific plan provisions that supported the adverse benefit decision"; (4) "describe any additional information necessary to perfect the claim and why it is necessary"; (5) "provide a description of the relevant plan's review procedures and applicable time limits"; and, (6) "inform [participants] that they have the right to bring a civil action under ERISA." Further, the claims seek different remedies: while the Section 502(a)(1)(B) claim seeks recovery of benefits due under the Plans, the Section 502(a)(3) claims seek to "enjoin United from [the] acts or practices" listed above, as well as "appropriate injunctive and/or equitable relief as determined at trial, including restitution, disgorgement and/or surcharge."

Genomind does allege that United breached fiduciary duties by "reducing benefit expenses for itself," contrary to the interests of plan participants. Insofar as Plaintiff's 502(a)(3) claims challenge Defendants' failure to pay the plan benefits Plaintiff is owed, then they would overlap with Plaintiff's Section 502(a)(1)(B) claim. At the motion to dismiss stage, however, it is unclear whether Genomind is entitled to "adequate" monetary relief for Defendants' conduct,

---

[5] This regulation sets out detailed "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries." *Id.* § 2560.503-1(a).

and it is therefore not yet established that there is "no need for further equitable relief." *Varity*, 516 U.S. at 512; *see also Tannenbaum v. UNUM Life Ins. Co. of Am.*, 2004 WL 1084658, at *4 (E.D. Pa. Feb. 27, 2004) (denying motion to dismiss Section 502(a)(3) claim as duplicative because "[a]t this stage, we cannot know whether Plaintiff will be able to prove his entitlement to benefits under § 1132(a)(1)(B)."); *Parente v. Bell Atlantic Pa.*, 2000 WL 419981, at *3 (E.D. Pa. Apr.18, 2000) ("under *Varity*, a plaintiff is only precluded from seeking equitable relief under § 1132(a)(3) when a court determines that plaintiff *will certainly receive* or *actually receives* adequate relief for her injuries under § 1132(a)(1)(B) or some other ERISA section.").

### B.  Claims Under Pennsylvania Law

Having determined that the Motion to Dismiss will not be granted as to Genomind's federal statutory claims, what remains is to determine whether the Motion should be granted as to Genomind's claims under Pennsylvania law against United for breach of implied in fact contract, promissory estoppel, *quantum meruit*, unjust enrichment, and negligent misrepresentation.

#### i.  *Breach of Implied in Fact Contract*

To state a claim for breach of contract under Pennsylvania law, the plaintiff must allege facts sufficient to show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. 2002) (citation omitted).  "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written." *Enslin v. The Coca-Cola Co.*, 136 F.Supp.3d 654, 675 (E.D. Pa. 2015) (citation omitted).  Under Pennsylvania law, the existence of a contract depends on "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the

terms of the agreement are sufficiently definite to be enforced; and (3) whether there was

consideration." *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998)

(citation omitted).  The existence of a contract implied in fact is established for purposes of the

first element of contract formation "where the parties agree upon the obligations to be incurred,

but their intention, instead of being expressed in words, is inferred from acts in the light of the

surrounding circumstances." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652,

659 (Pa. 2009) (quotation marks and citation omitted); *see also Ingrassia Const. Co. v. Walsh*,

486 A.2d 478, 483 (Pa. Super. 1984) ("Implied contracts . . . arise under circumstances which,

according to the ordinary course of dealing and . . . common understanding . . . , show a mutual

intention to contract." (quotation marks and citation omitted)).

The Complaint alleges that the parties' had an implied in fact contract in which they

agreed that "if Genomind developed the Core 15 Test to align with United's Medical Policy, then

Genomind would provide genetic testing services to United insureds, United would deem those

services covered, and United would cause Genomind to be paid for those services."  However,

although "United agreed that Genomind's Core 15 Test would be covered as an out-of-network

service," United breached the parties' contract by failing to pay Genomind for its genetic testing

services using the Core 15 Test.  Defendants contend that the breach of implied in fact contract

claim must be dismissed because the Complaint does not allege facts showing the first and

second of the elements required to establish the existence of a contract: an intention to be bound

by an agreement, and sufficiently definite terms.

As to the first element, Defendants argue that the Complaint does not plausibly claim that

United manifested an intent to be bound to an agreement to pay for Genomind's testing services

because the alleged agreement "relies on the issuance of the 2019 Policy," which conditioned

payment on the terms of United insureds' insurance plans.  This, however, overstates the extent

to which the parties' agreement as alleged in the Complaint was founded on the 2019 Policy.

Undoubtedly, many of the alleged communications between United and Genomind are framed in

terms of whether the Core 15 test would satisfy the requirements of the 2019 Policy, as where the

Complaint alleges that Genomind "contacted United to begin working to ensure that its product

would be covered under the policy."  However, the Complaint (without reference to the 2019

Policy) also alleges that United "told Genomind that if Genomind developed a new test that only

tested the 15 covered genes, the 15-gene test would be covered."  Thus, for example, the

Complaint alleges that on a September 4, 2019 call, United employees "confirmed that

Genomind's product, when reduced to a 15-gene panel, would be covered by United . . .with

Genomind be proceeding as an out-of-network provider."  Accepting these allegations as true

and viewing them in the manner most favorable to Genomind, the Complaint has adequately

alleged that Defendants agreed to pay for the Core 15 Test as a covered medical service,

independent of the 2019 Policy.

Defendants next argue that the Complaint fails to allege that a contract was formed with

sufficiently definite terms because it fails to allege the specific rates United would pay for the

Core 15 Test.  Under Pennsylvania law, "for there to be an enforceable contract, the nature and

extent of its obligation must be certain; the parties themselves must agree upon the material and

necessary details of the bargain." *Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663, 666

(Pa. 1956).  "In other words, we look to see whether the terms are sufficiently definite to be

specifically enforced." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir.

2009) (quotation marks and citation omitted).  "An agreement is sufficiently definite if the

parties intended to contract with each other and if a reasonably certain basis exists upon which a

court could grant an appropriate remedy." *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 512 (Pa.

Super. 1992).  Although under Pennsylvania law "the price term is an essential term of a contract

and must be supplied with sufficient definiteness for a contract to be enforceable," where the

parties "agreed upon a practicable method of determining the price in the contract with

reasonable certainty, such as through a market standard, the contract is enforceable." *Feldman v.

Google, Inc.*, 513 F.Supp.2d 229, 238 (E.D. Pa. 2007) (citations omitted); *see also, e.g.*, *Zvonik

v. Zvonik*, 435 A.2d 1236, 1244-45 & n.8 (Pa. Super. 1981) ("If the parties provide a practicable,

objective method for determining this price or compensation . . . there is no such indefiniteness

or uncertainty as will prevent the agreement from being an enforceable contract." (quotation

marks and citation omitted)); *Portnoy v. Brown*, 243 A.2d 444, 447 (Pa. 1968) ("Where a

contract specifies that the price is to be measured by the 'fair market value' or 'reasonable value'

of the services or property involved, courts have generally held that the price is sufficiently

certain in order to have an enforceable obligation." (citations omitted)).

 Here, the Complaint does not allege that Defendants agreed to pay a specific price for

Core 15 Tests.  Thus, "an essential contractual element, i.e., the price one side was willing to

accept and the other side was willing to pay in concluding an agreement, was left to some future

date." *Zvonik*, 435 A.2d at 1244.  The Complaint explicitly alleges, however, that Genomind and

United agreed on a methodology to determine the price United would pay for Genomind's Core

15 test.  Specifically, the Complaint alleges that "United agreed to pay Genomind for its services

in an amount consistent with United's methodology for out-of-network services."  Granting all

reasonable inferences and viewing the facts in the light most favorable to Plaintiff, the Complaint

adequately alleges that the parties agreed on a practicable method to determine the price for the

Core 15 Tests: United agreed to pay Genomind pursuant to the pricing method it used for out-of-

network healthcare providers.

## ii. *Promissory Estoppel*

The promissory estoppel cause of action "is designed to prevent the injustice that results when a promisee is reasonably induced by, and relies upon, some promise by a promisor that is broken." *C & K Petroleum Prod., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988). "Under Pennsylvania law, to make [out] a claim for promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (citation omitted).

As to the first element, the alleged promise can be "implied," and need not be "express"; indeed, "misleading words, conduct, or silence can amount to a promise that will support promissory estoppel." *Dansko Holdings, Inc. v. Benefit Tr. Co.*, 991 F.3d 494, 499-500 (3d Cir. 2021) (brackets, quotation marks and citations omitted). However, the promise cannot be "broad and vague," *C & K Petroleum*, 839 F.2d at 192, or insufficiently "concrete," *Dansko*, 991 F.3d at 500. This is because "mere expressions of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 634 (3d Cir. 2013) (brackets, quotation marks, and citation omitted); *see also Penn-Aire Aviation, Inc. v. Adapt Appalachia, LLC*, 2017 WL 3169280, at *5 (Pa. Super. July 26, 2017) ("[P]romissory statements must objectively evidence a sufficient commitment or assurance on which a reasonable person would rely.").

United contends that the Complaint does not contain sufficient factual matter to satisfy the first element of Genomind's promissory estoppel claim – a concrete promise – because it

does not allege the precise amount United promised to pay for Genomind's genetic tests.  This argument too narrowly construes Genomind's promissory estoppel claim to be limited solely to United's alleged promise to pay for Genomind's genetic testing services, however.  The Complaint alleges that Defendants "assur[ed] Genomind that it would cover a 15-gene version of [its genetic test] if Genomind developed one" and "that the Core 15 Test satisfied United's coverage policy whether or not prior authorization was required for the particular plan at issue." The Complaint further alleges that Genomind detrimentally relied on Genomind's promises by "investing substantial time and money in developing the Core 15 Test for the sole purpose of fulfilling United's arbitrary 15-gene criterion."  In short, Genomind claims that United made a concrete promise it should have reasonably expected to induce action on Genomind's part and it did in fact induce Genomind, at great cost, to develop a 15-gene test.[6]  *Cf., e.g.*, *Landan v. Wal-Mart Real Est. Bus. Tr.*, 775 F. App'x 39, 44 (3d Cir. 2019) (defendant's statements to plaintiff about "conditions it deemed essential to keeping open the possibility of entering into a . . . lease" too vague); *Ankerstjerne v. Schlumberger Ltd.*, 155 Fed. App'x 48, 51 (3d Cir. 2005) (statements that defendant would get plaintiff's compensation "taken care of" and that it was "ridiculous

---

[6] This theory of Genomind's promissory estoppel claim, which pertains to United's promises as to Genomind's development of the Core 15 Test and could allow Genomind to recover the costs of developing this test, is distinguishable from a second theory advanced in the Complaint, which pertains to United's promises as to Genomind's use of the Core 15 Test.  Specifically, the Complaint alleges that if Genomind used the Core 15 Tests to provide genetic testing services for United insured patients, United would "accept bills from Genomind and to reimburse it for the Core 15 Test in an amount consistent with the terms and conditions of the underlying health care plans as applicable to each United insured treated by Genomind."  Genomind detrimentally relied on this promise, the Complaint alleges, by "providing the testing services that it offered to the United Insureds."

Because Genomind's recovery under this second theory could extend to money due under ERISA plans for its genetic testing services, ERISA could partially preempt Genomind's promissory estoppel claim to the extent that it relies on this theory.  However, as Genomind's promissory estoppel claim survives based on the first theory, whether the Complaint states a claim under the second theory need not be addressed.

[plaintiff] had not been compensated" too vague).[7]

### iii.   *Unjust Enrichment and Quantum Meruit*

To state a claim for unjust enrichment and *quantum meruit* under Pennsylvania law, a plaintiff must allege facts sufficient to show "(1) the benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018) (brackets and citation omitted).[8]  For purposes of such claims, 'benefit' means "any form of advantage."  *Zvonik*, 435 A.2d at 1241 (citing Restatement (First) of Restitution § 1, cmt. B (1937)).

Plaintiff's unjust enrichment and *quantum meruit* claims allege that Genomind "performed valuable services for United by, among other things, providing testing with the Core 15 Test for the benefit of the United Insureds," that United benefitted from these services, and that "Genomind is entitled to receive the reasonable value of the services it provided."  Here, Defendants contend that Plaintiffs have not alleged facts sufficient to show the first element of Genomind's unjust enrichment and *quantum meruit* claims because Genomind's performance of

---

[7] Defendants move to dismiss Genomind's negligent misrepresentation claim, arguing that because the Complaint does not allege that Defendants represented the specific price it would pay for Genomind's genetic tests, Genomind has failed to allege a misrepresentation of material fact, as required to state a claim for negligent misrepresentation under Pennsylvania law.  *See Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994).  But the Complaint alleges different misrepresentations of material facts, including, *inter alia*, that the "United Insureds had health benefits coverage with or through United for" Genomind's genetic tests, that "United would pay Genomind for such services," and that Genomind's "Core 15 Test fell within United's internal coverage policy."  Accordingly, Defendants' Motion to Dismiss will not be granted as to Plaintiff's negligent misrepresentation claim.

[8] "A claim for damages in *quantum meruit* is fundamentally an equitable claim of unjust enrichment," *Meyer*, 179 A.3d at 1102, which "creates an implied promise between parties in the absence of a contract in order to prevent unjust enrichment," *Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F.Supp.2d 434, 440 (E.D. Pa. 2007); *see also Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 998-99 (3d Cir.1987) ("*Quantum meruit* is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and not an actual contract at all." (quotation marks and citation omitted)).

genetic tests benefitted only Defendants' insured patients, not the insurance companies.

Defendants, however, cite no cases which support their proposition in the application of Pennsylvania law. They instead rely on cases from around the country – including Texas, New Jersey, Arkansas, and Florida – which reason that a health care provider's provision of services inures only to the benefit of patients, as "what the insurer gets is a ripened obligation to pay money to the insured – which hardly can be called a benefit." *Plastic Surgery Ctr., LLC v. Oxford Health Ins., Inc.*, 2019 WL 4750010, at *4 (D.N.J. Sept. 30, 2019) (quotation marks and citation omitted).[9] Quite apart from the fact that these cases are not decided under Pennsylvania law, their holding is far from uncontroversial. Indeed, the Third Circuit has recognized disagreement for purposes of New Jersey law "over whether a healthcare provider's provision of services to an insured may ever constitute a benefit to an insurer for purposes of an unjust enrichment claim." *Plastic Surgery Ctr.*, 967 F.3d at 241 n.26 (quotation marks and citations omitted). Give this fault line, one would expect Defendants to make no effort to explain why the Court should adopt the reasoning of these cases here by reference to their internal logic and/or Pennsylvania law. *See U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996) ("[W]e turn to the decisions of the highest state tribunal to answer a question of state law," and where the Pennsylvania Supreme Court "has not spoken on a subject . . . to the decisions of lower Pennsylvania courts." (citations omitted)).

On a motion to dismiss under Rule 12(b)(6), "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.

---

[9] Defendants also cite *Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, 506 F.Supp.3d 425, 432 (N.D. Tex. 2020) ("Recovery in *quantum meruit* cannot be had from an insurer based on services rendered to an insured, because those services aren't directed to or for the benefit of the insurer."), *Air Evac EMS Inc. v. USAble Mut. Ins. Co.*, 2018 WL 2422314, at *9 (E.D. Ark. May 29, 2018) (insurance company not "unjustly enriched because . . . it paid benefits for which its subscribers bargained."), aff'd, 931 F.3d 647 (8th Cir. 2019), and *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) ("[A] healthcare provider who provides services to an insured does not benefit the insurer.").

2005) (citation omitted).  Although the parties raise legal issues that have been addressed under the law of other states, they have not addressed how these issues would be resolved under Pennsylvania law.  Defendants' motion to dismiss Plaintiff's unjust enrichment and *quantum meruit* claims therefore will not be granted.[10]

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be denied.  An appropriate order follows.

**BY THE COURT:**

**/S/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**

---

[10]  This is not the only time in Defendants' briefing that an argument is made but no supporting law is supplied: In arguing for the dismissal of Plaintiff's breach of implied in fact contract claim, Defendants also posit that because Plaintiff's performance of genetic tests benefitted only patients, Plaintiff has failed to allege facts sufficient to show consideration for purposes of establishing contract formation.  Defendants again fail to address Pennsylvania law for this argument, however, so this argument fails for the same reason as their arguments for the dismissal of Plaintiff's unjust enrichment and *quantum meruit* claims.