IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GENOMIND, INC.,**<br>    **Plaintiff,**<br><br>    v.<br><br>**UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE, LLC, UNITED BEHAVIORAL HEALTH, UMR, INC., OXFORD HEALTH PLANS, LLC AND OPTUM, INC. ,**<br>    **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  21-0373 |

**MEMORANDUM OPINION**

This case centers on various payment disputes between Defendants United Healthcare Insurance Company and United Healthcare Services, Inc.'s (collectively, "United") and Plaintiff Genomind, Inc. ("Genomind") between 2015 and 2019.  United filed a Counterclaim seeking equitable relief against Genomind for violations of Section 1132(a)(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA") which the Court dismissed without prejudice on Genomind's Motion to Dismiss.  Now, Genomind moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure United's Amended Counterclaim.  Because the relief it seeks at the end of the day—damages—is unavailable under Section 1132(a)(3), United's Amended Counterclaim must be dismissed.

I.   **BACKGROUND**

United offers health plans under which it agrees to pay for covered healthcare claims in return for the payment of premiums by individual plan members or their employers.  Genomind is a provider of genetic testing services.  Genomind is an out-of-network, as opposed to in-

network, provider with respect to United's health plans; as a result, "whether and to what extent a Genomind test is a covered service is dictated by the terms of each United member's individual health plan and United's payment policies."  United maintains that Genomind billed and it paid $13 million for genetic testing services provided to plan patients from 2015-19 but that Genomind's services were not covered under United's individual health plans as genetic testing was not considered "medically necessary" under the plans prior to October 2019.  United now seeks return of those payments on the theory that Genomind "knew" that its tests were not covered all along, "but submitted the claims anyway," and now "refuses to return the money."

## II.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  When analyzing a motion to dismiss, the Complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief."  *Id*. at 210-11.

## III.  DISCUSSION

Section 1132(a)(3) of ERISA permits a civil action to be brought: "(A) to enjoin any act

or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).  The "equitable relief" available under Section 1132(a)(3) is cabined to "those categories of relief that were typically available in equity during the days of the divided bench." *Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016).  Whether a plaintiff's requested relief is legal or equitable "depends on [1] the basis of [the plaintiff's] claim and [2] the nature of the underlying remedies sought." *Id.* (alteration in original) (citation omitted). Simply labeling a claim as equitable does not make it so.  *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 n.1 (2002) (noting that "any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction").  Rather, "[t]o determine how to characterize the basis of a plaintiff's claim and the nature of the remedies sought," one turns to "the 'basic contours' of what equitable relief was typically available in premerger equity courts." *Wilson v. Aerotek, Inc.*, 2018 WL 11414958, at *5 (M.D. Pa. Sep. 7, 2018) (quoting *Great-West*, 534 U.S. at 217).

The usual distinction between an equitable and legal remedy is whether the recovery sought is against "some specific thing . . . rather than . . . a sum of money generally." *Hausknecht v. John Hancock Life Ins. Co. of New York*, 334 F. Supp.3d 665, 677 (E.D. Pa. 2018) (quoting *Montanile*, 577 U.S. at 145).  Typically, plaintiffs "could seek restitution in equity . . . where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *See Great-West*, 534 U.S. at 210; *see also Montanile*, 577 U.S. at 145  ("Equitable remedies are . . . directed against some specific thing . . . rather than a right to recover a sum of money generally out of the

3

defendant's assets."). If that property was traceable, equity courts "could then order defendant to transfer title (in the case of a constructive trust) or to give a security interest (in the case of an equitable lien) to a plaintiff who was, in the eyes of equity, the true owner." *Great-West*, 534 U.S. at 213.

Two decisions by the Supreme Court illustrate the distinction between legal and equitable remedies under ERISA. In *Great-West*, the Court decided that the plaintiff was seeking a legal remedy rather than an equitable one. There, the plaintiff sought reimbursement for medical expenses it paid on behalf of a participant. Specifically, the participant had obtained a settlement with a third-party, and the plaintiff sought what it purported to be "restitution" of the medical expenses from that settlement. The Supreme Court first observed that simply attaching the label of "restitution" did not make the relief equitable. *Id*. at 212. Restitution was a legal remedy when the plaintiff "could not assert title or right to possession of particular property, but . . . [could] show just grounds for recovering money to pay for some benefit the defendant had received from him." *Id.* at 213. Restitution was equitable, however, where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* Because in *Great-West* the defendant never had possession of the particular funds, the Court decided the remedy plaintiff sought was legal rather than equitable. *Id*. at 214.

Similarly, in *Montanile*, a benefit plan sought reimbursement from one of its participants for medical expenses he incurred after being hit by a drunk driver. Seeking an "equitable lien," the benefit plan asserted it had a right to funds the participant had received in a settlement with the drunk driver. *Montanile*, 577 U.S. at 140. Before the benefit plan sued, however, the participant had spent those funds. Thus, the Supreme Court held that even when a defendant

4

dissipates a specifically identified fund, the plaintiff pursuing a Section 1132(a)(3) remedy cannot obtain a judgment against the defendant's general assets "even though the defendant's conduct was wrongful." *Id*. at 145.

The ad damnum clause in United's Amended Counterclaim requests four remedies: (1) "actual and consequential damages in an amount to be determined at trial, plus interest"; (2) "an order obligating Defendants to disgorge the proceeds of the receipt of overpayments"; (3) "equitable relief, as described herein"; and, (4) "an award of the Plaintiffs' costs, including reasonable attorney's fees, in accordance with contractual provisions and ERISA § 502(g)(1)"; as well as "any other relief deemed just, proper, and/or equitable."

As an initial matter, the request for "actual and consequential damages" is easily disposed of as legal in nature and not available under 1132(a)(3). *See Montanile*, 577 U.S. at 137. Similarly, United's request for "an award of the Plaintiffs' costs, including reasonable attorney's fees, in accordance with contractual provisions and ERISA § 502(g)(1)" is legal in nature, as it "seek[s] to impose liability on the defendant" as opposed to "restor[ing] to [United] particular funds or property in the defendant's possession." 1 Lee T. Polk, ERISA Practice and Litigation § 5:4 (December 2021) (discussing *Great-West*, 534 U.S. at 214).

As to the remaining requests, "an order obligating Defendants to disgorge the proceeds of the receipt of overpayments" illustrates that United is simply using these terms with the aim of getting Genomind to pay it "a sum of money". United's allegations contain nothing to suggest that that the amount it seeks is clearly traceable to particular funds or property in Genomind's possession. Rather they reinforce that all United is seeking is payment of money, any money wheresoever it may come from, rather than from a particular fund, thing or piece of property in Genomind's possession. *See* Amended Counterclaim ¶1 ("Genomind received more than $13

million in overpayments from United, and Genomind refuses to *return the money*"); ¶17(Genomind knew this, but submitted the claims anyway, and it refuses to *return the money*."); ¶34 ("Genomind has refused to return the payments despite knowing it is not entitled to *any of the money* under United's plans."); *see also* ¶43 ("United only recently discovered the overpayments that are the subject of this Counterclaim and has informed Genomind of its obligation to *repay them* promptly and completely") (emphasis added).

United argues that it should be entitled to conduct discovery into whether a specific block of money containing the overpayments exists, but by so arguing it puts the horse before the cart—Section 1123(a)(3) is not a device permitting discovery to allow a plaintiff to evaluate whether it can state a claim. *See, e.g., Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc.*, 573 F. App'x. 197, 198 (3d Cir. 2014) (affirming grant of motion to dismiss because relief sought in Section 1132(a)(3) action was not equitable); *Hausknecht*, 334 F. Supp.3d at 676 (disposing of claims for relief that sought legal remedies on a motion to dismiss).

The Amended Counterclaim only seeks legal, rather than equitable relief, the former of which is unavailable under 1132(a)(3). As a result, it must be dismissed. Because this is the second time that United has tried but failed to set forth a viable claim it will be dismissed with prejudice.

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**